ELECTRONICALLY
FILED
Jul 19 2023
U.S. DISTRICT COURT
Northern District of WV

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FRANK BJORN XAVIER HELD,**

        **Plaintiff,**

v.                                       Civil Action No: 1:23-CV-59
                                         Judge: Kleeh

**MONONGALIA EMERGENCY
MEDICAL SERVICES, INC.,**

**THE CITY OF MORGANTOWN
POLICE DEPARTMENT,**

**PFC S. IAMBAMRUNG,**
in his official and individual capacity;

**PFC FALLINGER,**
in his official and individual capacity,

**THE WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION;**

**JOHN DOE CORRECTIONAL OFFICERS
OF THE NORTH CENTRAL REGIONAL JAIL,**
in their official and individual capacities;

        **Defendants.**

## **COMPLAINT**

**COMES NOW** the Plaintiff Frank Bjorn Xavier Held ("Mr. Held"), by counsel, Ryan J. Umina, Beth L. Umina, Seth F. Huy, and the law firm of Umina Legal, PLLC, and for his Complaint against the above-named Defendants alleges the following:

## PRELIMINARY STATEMENT

This is an action brought under 42 U.S.C. §1983 and the laws of the State of West Virginia to hold the Defendants accountable for their unreasonable, unlawful, and, at times, *heinous* actions against Mr. Held.

On August 20, 2021, Mr. Held, then a student at West Virginia University, made a mistake common among college students and consumed too much alcohol. When his roommates recognized this, they attempted to do the right thing and called for EMS, thereby invoking the protections afforded to both themselves and Mr. Held under W. Va. Code §16-47 *et seq.*, the "Alcohol and Drug Overdose Prevention and Clemency Act." This Act was passed by the West Virginia legislature specifically in response to the alcohol related death of WVU student Nolan Burch.

When officers arrived on scene, Mr. Held was in his bedroom, disoriented, and *covered in his own vomit*. Importantly, the responding Monongalia County EMS falsely reported that "by history and physical examination it was determined" Mr. Held was "alert and oriented, ha[d] no altered level of consciousness, [ . . . ] and ha[d] no evidence of [ . . . ] alcohol ingestion that impair[ed] patient decision-making." This was detailed on a form claiming that Mr. Held refused medical treatment. However, the police report relating to this event clearly contradicts this assertion.

Despite the obvious signs of Mr. Held's poor condition, the Morgantown Police Department officers involved arrested the Plaintiff and transported him to the North Central Regional Jail in an unconscionable state. Because Mr. Held was in such a state, he continued to be disoriented and argumentative at the North Central Regional Jail. In direct retaliation for Mr.

Held's mere words during processing, correctional officers took him into a back room, demanded that he strip naked, bend over, spread his cheeks, and then proceeded to pepper spray him in this defenseless state in his rectum. These heinous acts constituted nothing short of "cruel and unusual punishment," as well as battery and sexual assault.

All criminal charges filed against Mr. Held were subsequently dismissed and his record has been expunged. However, the actions and failures of the Defendants in this case cannot go unchallenged. The "Alcohol and Drug Overdose Prevention and Clemency Act" was specifically passed to protect individuals like Mr. Held and under no circumstances may any officer pepper spray a human being in, on, or near their rectum.

## JURISDICTION, AND VENUE

1. This action seeks remedies pursuant to 42 U.S.C. §§1983, alleging violations of the Constitution of the United States of America, as well as the laws of the State of West Virginia.

2. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. §§1331, 1343, and 1367.

3. Venue is proper before this Honorable Court pursuant to 28. U.S.C. §1391(b).

## PARTIES

4. The Plaintiff, Frank Bjorn Xavier Held, is a full-time resident of Crystal Lake, Illinois, but at all times relevant herein, attended West Virginia University ("WVU") for his undergraduate studies.

5. The West Virginia Division of Corrections and Rehabilitation ("WVDOCR") is a State governmental entity responsible for the administration of all state-run correctional facilities in West Virginia.

6.  The WVDOCR oversees and operates the North Central Regional Jail, which also employs the John Doe correctional officer defendants in this case.

7.  At all times relevant herein, Defendant John Doe Correctional Officers ("Correctional-Officer Defendants"), were employees, agents, and/or other representatives of the North Central Regional Jail.

8.  At all times relevant herein, Defendant Monongalia Emergency Medical Services, Inc., (d/b/a Mon EMS) ("Mon EMS"), was a West Virginia Non-Profit Corporation providing Ambulatory Services in Monongalia County and the surrounding areas as part of a collaborative effort between Mon Health and WVU Medicine.

9.  At all times relevant herein, Defendants Iambamrung and Fallinger ("Officer-Defendants") were employees, agents, and/or other representatives of the City of Morgantown, West Virginia, Police Department.

10. At all times relevant herein, each Defendant acted under the color of the laws, statutes, and regulations of the State of West Virginia or in conjunction with those Defendants doing the same.

## BACKGROUND AND FACTS

### The Death of Nolan Burch and the "Alcohol and Drug Overdose Prevention and Clemency Act"

11. On November 12, 2014, the Morgantown and WVU communities were struck by tragedy: a student named Nolan Burch died during his final night of pledging a Fraternity at WVU due to excessive alcohol consumption. *See* "Never Again|WVU Magazine Article" attached hereto as **Exhibit (1)**.

12. It was revealed via security camera footage that an unresponsive Nolan was placed on a table roughly (90) minutes after being instructed to consume a full bottle of whiskey. During this time, some people walked past his limp body, and another even kicked him. CPR was not

administered until 911 and emergency services were called. Nolan died two days later after being removed from life support. *Id*.

13. During the investigation following Nolan's death, it was discovered that several students who could have helped Nolan or called emergency services did not, for fear of being blamed for his condition or being cited for underage drinking.

14. In response to this, West Virginia enacted a law on April 2, 2015, titled the "Alcohol and Drug Overdose Prevention and Clemency Act," which grants certain immunities from prosecution or criminal penalties for individuals who intervene in drug and alcohol overdose situations by seeking potentially life-saving emergency medical assistance for others, and for those individuals for whom treatment is sought. W. Va. Code §16-47 *et seq.*.

## Mr. Held's Apartment on August 20, 2021

15. On Friday August 20, 2021, during the beginning of the fall semester that year, Mr. Held was in Morgantown, West Virginia, drinking with his friends at their shared apartment.

16. As the night continued, Mr. Held realized that he had consumed too much alcohol, and decided to retire to his bedroom to rest.

17. After some time had passed, Mr. Held's friends became concerned about him and called emergency services to come check on him, invoking the protections afforded to both Mr. Held and themselves pursuant to W. Va. Code §16-47 *et seq.*.

18. Following the call to emergency services, both the Morgantown Police Department and EMS arrived at Mr. Held's residence, with the Police being the first to enter Mr. Held's room.

19. Mr. Held recalls being woken by the Officer-Defendants in his room with the paramedics following shortly thereafter.

20. He was asked several routine questions by the paramedics. During these questions Mr. Held was visibly upset by being woken up in his current state.

21. Mr. Held recalls one of the Defendant-Officers telling him he had two options: (1) go with the paramedics to the hospital or (2) be arrested by the Officers and transported to the police station.

22. Mr. Held responded by throwing his arms in the air and making a "woah" noise.

23. This gesture prompted the Officer-Defendants to then wrongfully arrest Mr. Held, rip him from his bedroom, and transport him to North Central Regional Jail for holding as a pretrial detainee.

24. This conduct was a willful, wanton, and reckless violation of Mr. Held's rights.

25. Importantly, the police report written by Defendant Iambamrung states, "[o]nce inside the apartment, officers made contact with the male, later identified as Frank Bjorn Xavier Held, in his bedroom covered in vomit." *See* Primary Report by S. Iambamrung ("Police Report"), attached hereto as **Exhibit (2)**.

26. Moreover, the Report goes on to demonstrate that Mr. Held was in an extremely intoxicated state, purportedly yelling, not answering questions, and unable to follow instructions. *Id*.

27. Thereafter, the Monongalia County EMS employees on scene made false statements in a document purporting to show that Mr. Held refused medical treatment by stating, "by history and physical examination it was determined" Mr. Held was "alert and oriented, ha[d] no altered level of consciousness, [ . . . ] and ha[d] no evidence of [ . . . ] alcohol ingestion that impair[ed] patient decision-making." *See* Emergency: 911 Form, attached hereto as **Exhibit (3)**.

28. Stated succinctly, the Police Report and Emergency: 911 Form are in direct contradiction to one another as it related to Mr. Held's state at the time of his arrest.

## Mr. Held's Experience at North Central Regional Jail

29. After completing the hour-long drive, without receiving any medical treatment, Mr. Held arrived at North Central Regional Jail. By this point, Mr. Held was still under the influence of alcohol and had become increasingly agitated with his situation.

30. Mr. Held recalls being snarky with the correctional officers while they completed his intake.

31. In response to this, the John Doe Correctional Officer-Defendants took Mr. Held aside, removed all his clothes, and conducted a strip search.

32. During this completely unwarranted & unnecessary search, one of the John Doe Correctional Officer-Defendants required Mr. Held to turn around, bend over, and then discharged a round of pepper spray mere inches away from Mr. Held's rectum.

33. Mr. Held suffered excruciating physical pain and humiliation as a result of the Defendant's actions.

34. Following this incident, Mr. Held was given a suicide jacket and placed in a room with other similarly dressed individuals.

35. The following day, a friend of Mr. Held's posted his bail and Mr. Held was promptly released. He then procured an attorney to address the criminal charges which had been brought against him.

36. Thereafter, all criminal charges were dismissed, and his record was expunged.

37. As a direct and proximate result of the Defendants' knowing and intentional mistreatment, Mr. Held suffered and continues to suffer injuries and damages including, but not limited to, physical pain and discomfort, humiliation, mental anguish, and emotional distress.

## COUNT I
## 42 U.S.C. §1983: EXCESSIVE USE OF FORCE

38.     The Plaintiff incorporates by reference paragraphs 1-37 above, as if fully set forth herein.

39.     The John Doe Officer-Defendants and Correctional Officer-Defendants, while acting under the color of the law, violated Mr. Held's constitutional rights by unreasonably using excessive force, as described herein, on or about August 20, 2021, which resulted in Mr. Held's injuries.

40.     It is well established that the Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment and is not an incident of some other legitimate governmental purpose. *Young v. Muncy,* 2020 U.S. Dist. LEXIS 55024 (citing *Duff v. Potter,* 665 F.App'x 242, 244 (4th Cir. 2016)).

41.     Sexual assault is not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries under §1983. *Id.*

42.     Most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically. *Young v. Muncy,* 2020 U.S. Dist. LEXIS 55024 (citing *Kingsley v. Hendrickson,* 135 S. Ct. 2466 (2015)).

43.     Sexual assault is not a legitimate part of a prisoner's punishment, particularly here, where the Plaintiff is a pretrial detainee who "cannot be punished at all, much less maliciously and sadistically." *Young v. Muncy,* 2020 U.S. Dist. LEXIS 55024 (citing *Kingsley v. Hendrickson,* 135 S. Ct. at 2473 (2015)).

44.     Clearly the Correctional Officer-Defendants' actions violated the constitutional rights guaranteed to Mr. Held as a pretrial detainee by the Fourteenth Amendment of the United States Constitution.

45. The Officer Defendants violated the constitutional rights guaranteed to Mr. Held to be free from the unnecessary and excessive force utilized during his wrongful arrest.

46. The Defendants' actions were not taken in good-faith and were in violation of clearly established law.

47. The Defendants' actions were unnecessary, unreasonable, unlawful, and unjustified.

48. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Mr. Held suffered substantial damages, both compensatory and general, including, but not limited to, severe emotional distress, mental anguish, pain, and suffering.

49. The assault against Mr. Held, which was sexual in nature, was not a legitimate part of a prisoner's punishment, particularly here where Mr. Held was a pretrial detainee who could not be punished at all, much less maliciously and sadistically.

50. Additionally, Defendant Mon EMS contributed to and/or caused this harm by failing to ensure Mr. Held received appropriate medical care, filing a false report describing Mr. Held's condition on the night of the incident, and by co-conspiring with the other defendants and/or acting at the direction or in conjunction with the Morgantown Police Department in doing so.

51. Because the Defendants actions, and possibly other employees, agents, and/or representatives of MON EMS, North Central Regional Jail, and the Morgantown Police Department were "motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights" of Mr. Held, an award of punitive damages is appropriate to the fullest extent permitted by law. *See, Morning v. Dillion Cty.,* 2018 U.S. Dist. LEXIS 163072, at *12 (quoting *Smith v. Wade*, 461 U.S. 20, 56 (1983)).

## COUNT II
### BATTERY

52. The Plaintiff incorporates by reference paragraphs 1-51 above, as if fully set forth herein.

53. The Officer-Defendants, Mon EMS, and Correctional-Officer Defendants, all as co-conspirators, created an apprehension within Mr. Held of immediate physical harm by making threats of physical harm to his person.

54. The Officer-Defendants, Mon EMS, and the Correctional-Officer Defendants carried out their threats of physical harm by injuring Mr. Held as described in detail above.

55. The Officer-Defendants, Mon EMS, and the Correctional-Officer Defendants committed multiple batteries upon Mr. Held, ultimately proximately causing severe bodily injury.

56. As a direct and proximate result of Mon EMS, Officer-Defendants and Correctional-Officer Defendants' conduct, Mr. Held suffered bodily injury, and will seek compensation for physical and emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

57. The actions of the Mon EMS, Officer-Defendants, and Correctional-Officer Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard of Mr. Held's rights, thereby justifying an award of punitive damages, to the extent such damages are recoverable.

58. The WVDOCR and/or North Central Regional Jail is vicariously liable for the actions of the Correctional-Officer Defendants committed within the scope of their employment.

### COUNT III
### UNLAWFUL ARREST

59. The Plaintiff incorporates by reference paragraphs 1-58 above, as if fully set forth herein.

60. The Officer-Defendants' arrest of Mr. Held was unnecessary, unwarranted, and unlawful.

61. The Officer-Defendants, while acting within the scope of their employment as police officers for the City of Morgantown, violated the rights and protections owed to Mr. Held by the Constitution and the laws of West Virginia.

62. Mon EMS, acting in conjunction with the Officer-Defendants, contributed to the narrative leading to Mr. Held's unlawful arrest by providing false information in their report and not assisting Mr. Held with the proper medical treatment at the time of the incident.

63. Both the federal and state constitutions protect citizens from unreasonable arrests and provide for the issuance of a warrant upon a showing of probable cause. *U.S. Const. amend. IV*; *W. Va. Const. art. III, § 6*. Warrantless arrests are possible, however, and the right to arrest in public without a warrant, based on probable cause that the person has or is about to commit a felony, is the general if not universal rule in this country. *State v. Mullins*, 355 S.E.2d 24, 25 (W. Va. 1987).

64. However, a different rule applies when the government intrudes into the privacy of a person's home. A warrantless arrest in the home must be justified not only by probable cause, but by exigent circumstances which make an immediate arrest imperative. *Mullins*, 355 S.E.2d at 25.

65. The Officer-Defendants lacked probable cause when they wrongfully arrested Mr. Held in his own apartment. Mr. Held had not committed a misdemeanor in their presence, nor was he obstructing a police investigation, as the only questions being asked were those of the EMS paramedics. Further, no exigent circumstances existed which would justify such an arrest.

66. The actions of the Officer-Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard of Mr. Held's rights, thereby justifying an award of punitive damages.

67. The WVDOCR and/or North Central Regional Jail is vicariously liable for the actions of the Correctional-Officer Defendants committed within the scope of their employment.

## COUNT IV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

68. The Plaintiff incorporates by reference paragraphs 1-67 above, as if fully set forth herein.

69. Mon EMS's failure to treat Mr. Held with the appropriate medical care at the time of the incident, filing of a false report to support the Officer-Defendants' narrative, and allowing Mr. Held to be arrested instead of providing medical assistance was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

70. The Officer-Defendants' and Correctional-Officer Defendants' application of force, in both arresting Mr. Held and using pepper spray inappropriately on him while detained was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

71. Mon EMS, Officer-Defendants, and Correctional-Officer Defendants acted with the intent to inflict physical and emotional distress when it was certain or substantially certain that emotional distress would result from this outrageous conduct.

72. Mon EMS, Officer-Defendants', and Correctional-Officer Defendants' actions caused Mr. Held to suffer severe emotional distress both as he was being arrested and viciously assaulted with the pepper spray.

73. The emotional distress Mr. Held experienced was so severe, no reasonable person could be expected to endure it.

74. As a direct and proximate result of the Defendants' actions, Mr. Held suffered substantial damages, both compensatory and general, including, but not limited to, severe emotional distress, mental anguish, pain, and suffering.

75. The actions of the Defendants against Mr. Held were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

## COUNT V
### NEGLIGENT HIRING, TRAINING, AND SUPERVISION

76. The Plaintiff incorporates by reference paragraphs 1-75 above, as if fully set forth herein.

77. At all times relevant hereto, Mon EMS owed Mr. Held a duty of care.

78. Mon EMS owed those in its care, including Mr. Held, a duty to conduct a background check or otherwise reasonably investigate prospective employees, including those who responded to the scene of this incident.

79. Upon information and belief, Mon EMS did not conduct a reasonable investigation into the responding employees' backgrounds and did not adequately assess the possible risk of harm or injury to third-parties that could result from their conduct if they were employed and/or retained at Mon EMS.

80. Mon EMS owed those in its care, including Mr. Held, a duty to properly train and supervise its employees.

81. Upon information and belief, Mon EMS failed to adequately train its employees concerning, among other things, the falsification of a response report, the level of care needed in a situation such as Mr. Held's, and the rights of someone like Mr. Held in this situation.

82. Upon information and belief, Mon EMS likewise failed to adequately supervise its employees, including those that responded to the scene on the night at issue.

83. Mon EMS has the authority to formulate, implement, and administer the policies, customs, and practices of their agency and thus represent its official policies.

84. As a direct and proximate result of Mon EMS's breach of their duties of care, Mr. Held suffered severe bodily injury, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; physical and emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

85. At all times relevant hereto, the WVDOCR and/or North Central Regional Jail owed the detainees at North Central Regional Jail, including Mr. Held, a duty of care.

86. The WVDOCR and/or North Central Regional Jail owed the inmates and detainees at North Central Regional Jail, including Mr. Held, a duty to conduct a background check or otherwise reasonably investigate prospective correctional officers at North Central Regional Jail, including the Correctional-Officer Defendants.

87. Upon information and belief, the WVDOCR and/or North Central Regional Jail did not conduct a reasonable investigation into the Correctional-Officer Defendants' background and did not adequately assess the possible risk of harm or injury to third-parties that could result from the conduct of the Correctional-Officer Defendants if they were employed and/or retained as correctional officers at North Central Regional Jail.

88. The WVDOCR and/or North Central Regional Jail owed the inmates and detainees at North Central Regional Jail, including Mr. Held, a duty to properly train and supervise correctional officers employed by North Central Regional Jail, including the Correctional-Officer Defendants.

89. Upon information and belief, the WVDOCR and/or North Central Regional Jail failed to adequately train its correctional officers, including the Correctional-Officer Defendants, concerning, among other things, the needless use of violence and excessive force.

90. Upon information and belief, the WVDOCR and/or North Central Regional Jail likewise failed to adequately supervise its correctional officers, including the Correctional-Officer Defendants.

91. The WVDOCR and/or North Central Regional Jail have the authority to formulate, implement, and administer the policies, customs, and practices of their respective agencies and thus represent their official policies.

92. As a direct and proximate result of the WVDOCR and/or North Central Regional Jail's breach of their duties of care, Mr. Held suffered severe bodily injury, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; physical and emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

### COUNT VI
### ABUSE OF PROCESS

93. The Plaintiff incorporates by reference paragraphs 1-92 above, as if fully set forth herein.

94. The Officer-Defendants wrongfully and unlawfully pursued and issued criminal charges against Mr. Held, and arrested, detained, seized, and prosecuted him without probable cause or reasonable suspicion to believe that he had committed, was committing, or planned to commit any criminal acts.

95. When the Officer-Defendants arrested, detained, and seized Mr. Held, they had no reasonable basis or belief that he was engaged in or had engaged in any criminal activity.

96. Mon EMS, as co-conspirators, contributed to the misconduct of the Officer-Defendants by falsifying their report as described herein and by providing any other fraudulent paperwork that assisted in Mr. Held's wrongful arrest.

97. Mon EMS and the Officer-Defendants, by their actions as alleged above, sought to damage and harm Mr. Held's person, property, character, and in doing so, deprived him of his liberties.

98. Mon EMS' and the Officer-Defendants' actions against Mr. Held constitute willful and/or malicious misuse and/or misapplication of the law and/or legal process because these Defendants sought to accomplish the improper purpose of using the legal process to seize, harm, and embarrass Mr. Held and deprive him of his liberties.

99. As a direct and proximate result of Mon EMS and the Officer-Defendants' actions, Mr. Held has suffered damages including, but not limited to severe bodily injury, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; physical and emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

100. Mon EMS and the Officer-Defendants acted with the intent to deprive and/or with reckless disregard for Mr. Held's constitutional rights as provided by the laws and policies of the United States and the State of West Virginia.

## COUNT VII
### NEGLIGENCE

101. The Plaintiff incorporates by reference paragraphs 1-100 above, as if fully set forth herein.

102. The actions of Mon EMS during the night of the incident were, negligent, grossly negligent, and/or in reckless disregard of Mr. Held's rights.

103. The filing of a false report and failure to intervene when the Officer-Defendants began to treat Mr. Held's situation as an arrest, rather than the medical emergency that it was, constitutes negligence, gross negligence, and/or recklessnes by Mon EMS.

104. As a direct and proximate result of the actions of Mon EMS, Mr. Held has suffered damages including, but not limited to severe bodily injury, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; physical and emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

105.   The actions of Mon EMS were taken with reckless disregard for Mr. Held's rights. As such, Mr. Held will seek punitive damages as provided for in his prayer for relief, and as allowed by law.

**WHEREFORE,** the above-described conduct of the Defendants has directly and proximately caused injury and harm to Mr. Held, he demands the following relief:

(a)   Compensatory damages for all past, present and future medical expenses, miscellaneous expenses, and all other recoverable special damages in a fair and just amount determined by the jury;

(b)   General damages for past, present and future physical pain and suffering, mental anguish, emotional distress, permanent injury, embarrassment, annoyance, inconvenience, lost wages, loss of enjoyment of life, and all other recoverable damages in a fair and just amount determined by the jury;

(c)   Punitive damages in a fair and just amount as determined by the jury;

(d)   Pre-judgment and post-judgment interest;

(e)   Costs incurred in this action and reasonable attorney fees under 42 U.S.C. §1988; and

(f)   Such other further general or specific relief which may be proper.


**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

**Plaintiff Frank Bjorn Xavier Held**
**By Counsel,**


*/s/ Ryan J. Umina*
Ryan J. Umina, Esq. (W.Va. Bar #13056)
Beth L. Umina, Esq. (W. Va. Bar #13009)
Seth F. Huy, Esq. (W. Va. Bar #13894)
**UMINA LEGAL, PLLC**
133 Green Bag Road
Morgantown, WV 26505
Phone: (304) 838-8024
Fax:    (304) 715-3638



*/s/ Morgan Leach*
J. Morgan Leach, Esq.
WV State Bar No. 13124
P.O. Box 5518 Vienna, WV 26105
morgan@jmorganleach.law
jmorganleach.law
(844) 444 - 5529 (call | text | fax)