IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FRANK BJORN XAVIER HELD,**

    **Plaintiff,**

  **v.**                                     **CIVIL NO. 1:23-CV-59**
                                                              **(KLEEH)**

**MONONGALIA EMERGENCY MEDICAL**
**SERVICES, INC. et al.**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS BY DEFENDANTS IAMBAMRUNG AND FALLINGER [ECF NO. 25]**

Pending before the Court is a motion to dismiss filed by Defendants Iambamrung and Fallinger. For the reasons discussed herein, the motion is **GRANTED**.

    **I.**    **PROCEDURAL HISTORY**

On July 19, 2023, Plaintiff Frank Bjorn Xavier Held ("Plaintiff") filed a complaint in this case. After two motions to dismiss were filed, Plaintiff filed an amended complaint.[1] In the amended complaint, Plaintiff names Defendants Monongalia Emergency Medical Services, Inc. ("Mon EMS"), the City of Morgantown, PFC S. Iambamrung ("Iambamrung"), PFC Fallinger ("Fallinger"), the West Virginia Division of Corrections and Rehabilitation ("WVDOCR"), and John Doe Correctional Officers of

---

[1] The Court denied the original motions to dismiss as moot. See ECF No. 45.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS BY DEFENDANTS IAMBAMRUNG AND FALLINGER [ECF NO. 25]**

the North Central Regional Jail ("John Doe Correctional Officers") (together, "Defendants").[2]  Iambamrung and Fallinger (together, the "Officers") filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is fully briefed and ripe for review.

## II.  FACTS

The following facts are taken from the amended complaint. For the purposes of deciding this motion, the Court assumes that they are true.  At all relevant times, Plaintiff was attending West Virginia University for his undergraduate studies.  Am. Compl., ECF No. 21, at ¶ 4.  On August 20, 2021, Plaintiff was drinking with friends at his apartment.  Id. ¶ 16.  He realized he had consumed too much alcohol, and he went to his bedroom to rest. Id. ¶ 17.  After some time had passed, his friends became concerned about him and called emergency services.  Id. ¶ 18.  Both the Morgantown Police Department and Mon EMS arrived at the residence. Id. ¶ 19.

The paramedics asked Plaintiff several questions, and he was visibly upset.  Id. ¶ 21.  Plaintiff recalls one of the Officers telling him that he had two options: (1) go with the paramedics to the hospital, or (2) be arrested and transported to the police

---

[2] Plaintiff moved to amend the amended complaint, but the Court denied the request.  See ECF No. 59.

station.  Id. ¶ 22.  Plaintiff responded by "throwing his arms in the air and making a 'woah' noise."  Id. ¶ 23.  The officers then arrested him, "rip[ped] him from his bedroom," and took him to North Central Regional Jail ("NCRJ").  Id. ¶ 24.

The reports created by the police and Mon EMS contradict one another.  Id. ¶ 29.  The police report, written by Iambamrung, states, "Once inside the apartment, officers made contact with the male, later identified as Frank Bjorn Xavier Held, in his bedroom covered in vomit."  Id. ¶ 26.  The report also states that Plaintiff was extremely intoxicated, yelling, not answering questions, and unable to follow instructions.  Id. ¶ 27.  The Mon EMS documentation states that Plaintiff refused medical treatment and that "by history and physical examination it was determined" that Plaintiff was "alert and oriented, ha[d] no altered level of consciousness, . . . and ha[d] no evidence of . . . alcohol ingestion that impair[ed] patient decision-making."  Id. ¶ 28.

Without receiving any medical treatment, Plaintiff arrived at NCRJ.  Id. ¶ 30.  By this point, Plaintiff was still intoxicated and had become increasingly agitated.  Id.  He was "snarky" with the correctional officers while they completed his intake.  Id. ¶ 31.  In response, the John Doe Correctional Officers took him aside, removed his clothing, and conducted a strip search.  Id. ¶ 32.  During the search, one of the John Doe Correctional Officers

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS BY DEFENDANTS IAMBAMRUNG AND FALLINGER [ECF NO. 25]**

required Plaintiff to turn around and bend over, and then he or she discharged a round of pepper spray inches away from Plaintiff's rectum. Id. ¶ 33. Plaintiff suffered excruciating pain and humiliation. Id. ¶ 34.

Plaintiff was then given a suicide jacket and placed in a room with other similarly dressed individuals. Id. ¶ 35. The next day, Plaintiff's friend posted his bail, and Plaintiff was released. Id. ¶ 36. All criminal charges against him were dismissed, and his record was expunged. Id. ¶ 37. Plaintiff suffered and continues to suffer injuries and damages including, but not limited to, physical pain and discomfort, humiliation, mental anguish, and emotional distress. Id. ¶ 38.

Based on these facts, Plaintiff asserts the following causes of action:

- Count One – Excessive Use of Force (42 U.S.C. § 1983);
- Count Two – Battery;
- Count Three – Unlawful Arrest;
- Count Four – Intentional Infliction of Emotional Distress;
- Count Five – Negligent Hiring, Training, and Supervision;
- Count Six – Abuse of Process; and
- Count Seven – Negligence.

### III. <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007) (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. MA.R.T.in</u>, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts

which could be proven in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

## IV. DISCUSSION

For the reasons discussed below, the motion to dismiss is granted in its entirety.

### A. The Alcohol and Drug Overdose Prevention and Clemency Act

In 2015, the West Virginia Legislature enacted the Alcohol and Drug Overdose Prevention and Clemency Act (the "Act"). In the Act, the Legislature made the express finding that "it is in the public interest to encourage citizens to intervene in drug and alcohol overdose situations by seeking potentially life-saving emergency medical assistance for others without fear of being subject to certain criminal penalties." W. Va. Code § 16-47-2(b). Plaintiff, as the individual for whom medical assistance was sought, has asserted that he is entitled to certain protections under the Act.

While the Act affords some protections for the individual for whom medical assistance was sought, Plaintiff has not sufficiently alleged that he is entitled to those protections. Under the Act, the biggest benefactors are the persons who report the need for emergency medical assistance: "a person who, in good faith and in a timely manner, seeks emergency medical assistance for a person

who reasonably appears to be experiencing an overdose may not be held criminally responsible for a violation of" several specific crimes. See id. § 16-47-4(a). This immunity can also extend to "the person for whom emergency medical assistance was sought" (here, Plaintiff), but only if certain conditions are met. For such a person to be entitled to immunity under the Act, he or she must, "after receiving that assistance, . . . participate[] in, compl[y] with, and complete[] a substance abuse treatment or recovery program approved by the court." Id. § 16-47-5(a). Alternatively, a court may consider other sentencing and clemency options, including deferred prosecution, pretrial diversion, drug court, probation, conditional discharge, a weekend jail program, a community service or work program, and more. Id. Plaintiff has not alleged that he participated in any of the above or that the state court considered any of the above. Accordingly, for purposes of deciding this motion, the Court cannot find that Plaintiff is entitled to any immunity under the Act.

Additionally, the Court cannot conclude that the Officers are entitled to any immunity under the Act. The Act provides, "Except in cases of willful, wanton or reckless misconduct, law-enforcement personnel are immune from civil liability for citing or arresting a person who is later determined to qualify for immunity" under Chapter 16, Article 47. Id. § 16-47-6. Because

there is nothing before the Court indicating that Plaintiff qualifies for protection under the Act, the Court cannot afford the Officers the related immunity at this stage. For purposes of this motion, the Court concludes that the immunity contemplated in the Act does not apply to either Plaintiff or the Officers.

B.   **Counts One and Two – Excessive Force and Battery**

In Count One, Plaintiff asserts that the Officers violated his constitutional rights by unreasonably using excessive force. In Count Two, he asserts that the Officers committed the tort of battery against him. The Officers argue that both counts should be dismissed as insufficiently pled. In response, Plaintiff asserts that "there was no indication that an arrest was necessary" because "Officers should be well trained and knowledgably [sic] enough when working in a college town like Morgantown to know when to treat a potential alcohol overdose for what it is — a medical emergency requiring medical assistance, not a crime for which force is needed to arrest the individual suffering." Response, ECF No. 39, at 5. He argues, therefore, that "the force used to remove Mr. Held from his apartment and transport him to NCRJ was excessive from the outset." Id.

This Court is not in a position to determine whether the Officers should have used their discretion to arrest someone who broke the law in their presence. Exhibit 2 to the amended

complaint indicates that Plaintiff was 20 years old when these events occurred. See Exh. 2, Amended Compl., ECF No. 1-2. Plaintiff admits that he "consumed too much alcohol" and was "covered in his own vomit." Am. Compl., ECF No. 21. The Officers observed Plaintiff's intoxicated state, including his vomit. Clearly, they had probable cause to arrest him. See W. Va. Code § 60-3A-24(a)(1) ("Any person who is under the age of twenty-one years who . . . consumes . . . alcoholic liquor is guilty of a misdemeanor . . . ."). Any argument that the arrest was "excessive from the outset" is baseless.

With respect to Count One, the Court agrees with the Officers that Plaintiff has not identified any facts surrounding the arrest itself that could be considered excessive. Plaintiff alleges that the Officers arrested him, "rip[ped] him from his bedroom," and took him to NCRJ. See Am. Compl., ECF No. 21, at ¶ 24. With respect to Count Two, under West Virginia law, an officer may use a reasonable amount of force to bring an arrestee under his control. See State ex rel. Mullins v. McClung, 17 S.E.2d 621, 624 (W. Va. 1941) (finding that the arrest of a misdemeanant may be effected by the use of "such reasonable force, including the use of a club, as the surrounding circumstances apparently require"); see also Lowe v. Spears, No. 3:06-0647, 2009 WL 1393860, at *6 (S.D.W. Va. May 15, 2009) (Chambers, J.) (dismissing a common law

battery claim against a police officer at summary judgment because there was no showing of excessive force during the arrest). Because the amended complaint includes no facts indicating that the Officers used excessive force, the motion to dismiss is **GRANTED** in this respect, and Counts One and Two are **DISMISSED WITH PREJUDICE** against the Officers.

  **C.**  **Count Three – Unlawful Arrest**

  In Count Three, Plaintiff appears to assert that the Officers lacked probable cause to arrest him. The Officers argue that Count Three should be dismissed because it was obvious to them that Plaintiff had committed a crime, and they were in the home lawfully.

  Again, Exhibit 2 to the amended complaint indicates that Plaintiff was 20 years old. See Exh. 2, Amended Compl., ECF No. 1-2. Plaintiff admits that he "consumed too much alcohol" and was "covered in his own vomit." Am. Compl., ECF No. 21. The Officers observed Plaintiff's intoxicated state, including his vomit. Clearly, they had probable cause to arrest him. See W. Va. Code § 60-3A-24(a)(1) ("Any person who is under the age of twenty-one years who . . . consumes . . . alcoholic liquor is guilty of a misdemeanor . . . ."). The Officers had received a call to come to the home, and by all accounts they were in the home lawfully.

Accordingly, the motion to dismiss is **GRANTED** in this respect, and Count Three is **DISMISSED WITH PREJUDICE** against the Officers.

### D.   Count Four – Intentional Infliction of Emotional Distress

Plaintiff alleges that the Officers' actions during his arrest constituted intentional infliction of emotional distress ("IIED"). In the Officers' motion, they argue that Plaintiff has failed to set forth sufficient facts to support an IIED claim.

A plaintiff must establish the following elements to prevail on a claim of intentional infliction of emotional distress:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, Travis v. Alcon Lab'ys, Inc., 504 S.E.2d 419 (W. Va. 1998). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Harless v. First Nat. Bank in Fairmont, 289 S.E.2d 692, 705 (W. Va. 1982).

On its face, the amended complaint fails to state an IIED claim against the Officers. Plaintiff alleges that the Officers arrested him, "rip[ped] him from his bedroom," and took him to NCRJ. See Am. Compl., ECF No. 21, at ¶ 24. These allegations do not rise to the level of outrageous conduct. Accordingly, the motion to dismiss is **GRANTED** in this respect, and Count Four is **DISMISSED WITH PREJUDICE** against the Officers.

E. **Count Six – Abuse of Process**

In Count Six, Plaintiff argues that the Officers unlawfully arrested, detained, seized, prosecuted, and pursued criminal charges against him. He asserts that the Officers "had no reasonable basis or belief that he was engaged in or had engaged in any criminal activity." Id. ¶ 107. The Officers move to dismiss Count Six against them, arguing that they had a reasonable basis to believe that Plaintiff had engaged in criminal activity.

"Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." Williamson v. Harden, 585 S.E.2d 369, 372 (W. Va. 2003) (quoting Preiser v. MacQueen, 352 S.E.2d 22, 28 (W. Va. 1985)). The elements of an abuse of process claim include "first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." Preiser, 352

S.E.2d at 28 n.8 (citation omitted). Notably, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id.

Again, Exhibit 2 to the amended complaint indicates that Plaintiff was 20 years old. See Exh. 2, Amended Compl., ECF No. 1-2. Plaintiff admits that he "consumed too much alcohol" and was "covered in his own vomit." Am. Compl., ECF No. 21. The Officers observed Plaintiff's intoxicated state, including his vomit, which is a crime in West Virginia. See W. Va. Code § 60-3A-24(a)(1) ("Any person who is under the age of twenty-one years who . . . consumes . . . alcoholic liquor is guilty of a misdemeanor . . . ."). As such, it is simply untrue that the Officers "had no reasonable basis or belief that he was engaged in or had engaged in any criminal activity." Plaintiff was charged with underage consumption, among other crimes, and he has not set forth any facts indicating that the Officers' arrest was improper. His claim for abuse of process fails as a matter of law. The Officers' motion to dismiss is **GRANTED** in this respect, and Count Seven is **DISMISSED WITH PREJUDICE** against the Officers.

## V. CONCLUSION

For the reasons discussed above, the Officers' motion to dismiss is **GRANTED** [ECF No. 25]. Counts One, Two, Three, Four,

and Six, as they pertain to the Officers, are **DISMISSED WITH PREJUDICE.** It does not appear that Plaintiff asserts claims against the Officers in Counts Five and Seven. If he does, he has failed to set forth facts sufficient to state a claim. Accordingly, all claims against the Officers are dismissed, and the Clerk is **DIRECTED** to terminate Iambamrung and Fallinger as defendants in this civil action.

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 17, 2024

*Tom S Kleeh*

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA